J-S77016-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: J.D.D. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: C.E., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2105 EDA 2018 |

Appeal from the Decree Entered June 18, 2018
In the Court of Common Pleas of Delaware County Orphans' Court at
No(s):  0047-2017-A

BEFORE:   OTT, J., DUBOW, J., and STRASSBURGER*, J.

MEMORANDUM BY DUBOW, J.:                    **FILED JANUARY 23, 2019**

C.E. ("Father") appeals from the June 18, 2018 Decree involuntarily terminating his parental rights to his minor son, J.D.D. ("Child"), born in January 2012.[1]  Additionally, Father's counsel, Alice Buggy Miller, Esquire, seeks to withdraw her representation of Father pursuant to ***Anders v. California***, 87 S. Ct. 1936 (1967), ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009), and ***In re V.E.***, 611 A.2d 1267, 1275 (Pa. Super. 1992) (extending ***Anders*** briefing criteria to appeals by indigent parents represented by court-appointed counsel in involuntary termination matters).  After careful

_____

[1] N.A.D. ("Mother") voluntarily relinquished her parental rights; the court confirmed her relinquishment on May 24, 2018.  **See** Final Decree, 5/24/18, at 1.  Mother has not appealed this Decree.  Additionally, on June 18, 2018, the court terminated the parental rights of any unknown father.  **See** Final Decree, 6/18/18, at 1.

_____

*   Retired Senior Judge assigned to the Superior Court.

review, we grant counsel's petition to withdraw representation, and affirm the orphans' court Decree.

**SUMMARY OF FACTS AND PROCEDURAL HISTORY**

Child was born in January 2012. Mother and Child have been known to Delaware County Children and Youth Services ("CYS") since October 2014, when Mother was admitted to Mercy Fitzgerald Hospital after she stopped taking medications prescribed for schizophrenia. *See* CYS Exhibit 1, at 3. Mother had also been diagnosed with an intellectual disability. *Id.* at 15. Maternal Grandmother had been caring for Child, but there were concerns that she was abusing drugs. *Id.* at 3. Mother named Father as a possible father of Child, but Father was not a resource as he was incarcerated at SCI Albion at the time. *Id.* After the family appeared to stabilize, the case was eventually closed in June 2015. *Id.*

The family was again referred to CYS in April 2016, following Mother's psychiatric hospitalization and allegations that Maternal Grandmother was using illegal substances and driving under the influence with Child in the car, rendering both Mother and Maternal Grandmother unable to care for Child. *Id.* There were additional concerns that Child had special needs that were not being met in his current home environment. *Id.*

On April 7, 2016, a CYS caseworker visited the residence to assess the allegations. *Id.* at 4. Maternal Grandmother was present at the apartment, which was cluttered and filthy. *Id.* Maternal Grandmother appeared to be under the influence of an unknown substance: her speech was slurred, very

fast, and incoherent, and she would occasionally state without prompting that she was not high. *Id.* Maternal Grandmother confirmed that Mother was in the hospital receiving inpatient psychiatric care. *Id.* The caseworker drug tested Maternal Grandmother and the results were positive for phencyclidine ("PCP"). *Id.*

The caseworker visited Mother in the hospital, and discovered that Mother had voluntarily hospitalized herself after hearing voices and feeling depressed. *Id.*

A search confirmed that Father was incarcerated at SCI Albion, but paternity was not established, and it was unclear whether he was Child's biological father. *Id.*

On April 7, 2016, when Child was nearly 4½ years old, CYS obtained custody after Mother signed a voluntary placement agreement. *Id.* Child was diagnosed with autism spectrum disorder, level 3, as well as impulsive disorder, impulsive character, and severe global developmental delays. *Id.* at 15. His developmental age was approximately that of a one-year-old. *Id.* At the time of his placement, Child was non-verbal, communicated by using pictures, and pointing at things he needed. *Id.* at 4. Child was adjudicated dependent on May 2, 2016. *Id.*

On May 10, 2017, CYS filed petitions seeking to terminate, voluntarily and involuntarily,[2] the parental rights of Mother, and to terminate involuntarily the parental rights of Child's unknown father. Both petitions averred that the identity of Child's father was unknown. **See** Petition, 5/10/17, at 1-4.

On June 21, 2017, CYS filed a petition seeking to voluntarily and involuntarily terminate the parental rights of Father.[3] The petition noted that Father had signed an acknowledgment of paternity on June 20, 2016. **See** Petition, 6/21/17, at 1-3. The petition further averred that Father, who is incarcerated, has an extensive criminal history.[4] **Id.** Father's earliest prison release date is 2027. **Id.**

---

[2] The petition averred that Mother wished to relinquish her rights voluntarily as relinquishment was in Child's best interests, but also raised grounds for involuntary termination under 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b). **See** Petition, 5/10/17, at 1-4.

[3] The petition averred that Father wished to relinquish his parental rights voluntarily as relinquishment was in Child's best interests, but also raised grounds for involuntary termination under 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b).

[4] In June 1999, Father entered a guilty plea to rape – forcible compulsion. **See** Court Summary, 13; 18 Pa.C.S. § 3121(a)(1). He was sentenced to three and one-half to seven years of incarceration. Father was released from prison in June 2010. In September 2011, Father was discharged from his sexual offender group for lack of attendance and a warrant was put out for his arrest. In May 2013, Father was arrested on new charges related to the sexual abuse of a child. **Id.** He entered a negotiated guilty plea to two counts of unlawful contact with a minor, two counts of indecent assault, and two counts of corruption of minors. **See** 18 Pa.C.S. §§ 6318(a)(1), 3126(a)(4), and 6301(a)(1)(i), respectively. Father was sentenced to twelve and one-half to twenty-five years of incarceration.

On May 24, 2018, the court convened a hearing on the petitions. Nicholas Orloff, Esquire, represented Child as guardian *ad litem* and legal counsel.[5]   Mother was represented by legal counsel and a guardian *ad litem*. Mother testified that she was relinquishing her parental rights of her own free will.  *See* N.T., 5/24/18, at 1-18.  Father, represented by counsel, was present in the courtroom and briefly testified on his own behalf.  *Id.* at 20.  Father stated that he loved Child, missed him, and "never really got to see him."  *Id.* No evidence was introduced to show that Father had ever seen Child, contacted Child, had any kind of relationship with Child, or that Child was bonded to Father.

CYS presented no witnesses.  Instead, counsel for CYS moved for the entry into the record of several exhibits, which included a detailed summary of the history of the case, mental health reports and psychiatric evaluations as to Mother, Father's acknowledgment of paternity, Father's criminal docket reports, a psychological evaluation of Child, and family and bonding evaluations regarding the foster parents and Child.  *See* N.T., 5/24/18, at 14-18.  Both parents stipulated to the admission of these documents.  *Id.*

At the conclusion of the hearing, the court held the matter under advisement, and later confirmed Mother's voluntary relinquishment and

---

[5] *See In re T.S.*, 192 A.3d 1080, 1092-93 (Pa. 2018) (holding that guardian *ad litem* may also serve as legal counsel where there is no conflict between child's best and legal interests, and that where child is pre-verbal, there can be no conflict between those interests).

involuntarily terminated Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b). Father timely filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

## ISSUES ON APPEAL

Father raises the following issues on appeal:

1. Did the [h]onorable [c]ourt err by terminating [Father's] parental rights because the evidence presented by [CYS] was insufficient to support the lower court's decision?

2. Whether counsel has satisfied all of the requirements established in *Anders v. California*, 386 U.S. 738 (1967) and [its] Pennsylvania equivalent, *Com. v. [McClendon]*, 434 A.2d 1185 [(Pa.] 1981) for withdrawal on grounds that the appeal is wholly frivolous?

*Anders* Brief at 9 (answers omitted).

## COUNSEL'S APPLICATION TO WITHDRAW

On October 11, 2018, Father's counsel filed an application to withdraw as counsel and an *Anders* brief. Father has not responded to the *Anders* brief. When faced with a purported *Anders* brief, this Court may not review the merits of any possible underlying issues without first examining counsel's request to withdraw. *Commonwealth v. Goodwin*, 928 A.2d 287, 290 (Pa. Super. 2007) (*en banc*). Prior to withdrawing as counsel on direct appeal under *Anders*, counsel must file a brief that meets the requirements established by the Pennsylvania Supreme Court in *Santiago*, namely:

(1) provide a summary of the procedural history and facts, with citations to the record;

(2) refer to anything in the record that counsel believes arguably supports the appeal;

(3) set forth counsel's conclusion that the appeal is frivolous; and

(4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361.

Counsel also must provide a copy of the *Anders* brief to his client. Attending the brief must be a letter that advises the client of his right to: "(1) retain new counsel to pursue the appeal; (2) proceed pro se on appeal; or (3) raise any points that the appellant deems worthy of the court[']s attention in addition to the points raised by counsel in the *Anders* brief." *Commonwealth v. Nischan*, 928 A.2d 349, 353 (Pa. Super. 2007), *appeal denied*, 594 Pa. 704, 936 A.2d 40 (2007).

*Commonwealth v. Orellana*, 86 A.3d 877, 879-880 (Pa. Super. 2014).

After determining that counsel has satisfied these technical requirements of *Anders* and *Santiago*, this Court must then make an independent determination of the merits of the issues raised in the *Anders* brief, as well as review the record to determine whether there are any non-frivolous issues overlooked by counsel. *Commonwealth v. Yorgey*, 188 A.3d 1190, 1197 (Pa. Super. 2018) (citations and footnote omitted).

Father's counsel has complied with all of the requirements of *Anders*/*Santiago*. We thus proceed to the merits of the issues raised.

**LEGAL ANALYSIS**

We review cases involving the termination of parental rights according to the following standards.

- 7 -

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (internal citations and quotations omitted).

Termination requires a bifurcated analysis:

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

While the orphans' court found that CYS met its burden of proof under 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b), we need only agree with its decision as to any one subsection of Section 2511(a) and subsection (b) in order to affirm the termination of parental rights. *In re B.L.W.,* 843 A.2d 380, 384 (Pa. Super. 2004)(citation omitted). For the following reasons, we

conclude that the trial court correctly determined that CYS met its burden of proof under 23 Pa.C.S. § 2511(a)(2) and (b).

The relevant portions of Section 2511 provide:

**(a)** **General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\*\*\*

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\*\*\*

**(b) Other considerations.**--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511.

**Termination Pursuant to 2511(a)(2)**

We first conclude that the orphans' court properly exercised its discretion by terminating Father's parental rights pursuant to Section 2511(a)(2).

To satisfy the requirements of Section 2511(a)(2), the moving party must prove "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *See In Interest of Lilley*, 719 A.2d 327, 330 (Pa. Super. 1998). The grounds for termination are not limited to affirmative misconduct, but concern parental incapacity that cannot be remedied. *In re Z.P.*, 994 A.2d 1108, 1117 (Pa. Super. 2010). Parents are required to make diligent efforts toward the reasonably prompt assumption of full parental duties. *Id.*

In *In re Adoption of S.P.*, 47 A.3d 817 (Pa. 2012), our Supreme Court considered the question of incarceration as a factor to be considered in a subsection (a)(2) analysis and concluded:

> [W]e now definitively hold that incarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing "essential parental care, control or subsistence" and the length of the remaining confinement can be considered as highly relevant to whether "the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent," sufficient to provide grounds for termination pursuant to 23 Pa.C.S. § 2511(a)(2). *See e.g. Adoption of J.J.,* 515 A.2d [883, 891 (Pa. 1986)] ("[A] parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties."); [*In re*] *E.A.P.,* 944 A.2d [79, 85 (Pa. Super. 2008)](holding termination under § 2511(a)(2) was supported by mother's repeated incarcerations and failure to be present for child, which caused child to be without essential care and subsistence for most of her life and which cannot be remedied despite mother's compliance with various prison programs).

***Id.*** at 830 (footnote omitted).

Here, the orphans' court based its determination on Father's lack of effort to parent Child or, indeed, to have any contact whatsoever with Child, both while he was incarcerated and otherwise. ***See*** Orphans' Court Opinion, 8/21/18, at 8-9. The only evidence introduced regarding Father's relationship with Child was that he saw Child "once in a blue moon" through "pictures and stuff." ***Id.*** In her ***Anders*** brief, counsel raises one point of evidence that could arguably support Father's appeal, namely, that he signed an acknowledgment of paternity while incarcerated. ***See Anders*** Brief, at 15.

Following a thorough review of the record in this matter, we conclude that the orphans' court did not abuse its discretion in granting the petition pursuant to Section 2511(a)(2). The record establishes that Father not only failed to provide security, stability and safety for the Child for any substantial period of time, but also failed to call or visit with Child, write any letters or send any cards or gifts to Child, or attempt to utilize any prison resources available to him to visit with Child. Additionally, Father is incarcerated and will remain incarcerated until, at the earliest, 2027, so it is reasonable to assume that he will be unable to care for the Child for most of the Child's life as a minor. Finally, there is no evidence of record from which the trial court can infer that Father is equipped to handle Child's complex medical and developmental needs on a sustained basis.

The record confirms that the orphans' court properly terminated Father's parental rights based on Section 2511(a)(2) after concluding that Father is incapable of parenting Child and that he cannot or will not remedy his parental incapacity.

**Termination Pursuant to 2511(b)**

We also conclude that, pursuant to Section 2511(b), the orphans' court properly determined that termination of Father's parental rights would be in the best interests of Child.

With respect to Section 2511(b), we consider whether termination of parental rights will best serve the Child's developmental, physical, and emotional needs and welfare. *Z.P.*, 994 A.2d at 1121. "In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." *Id.* The court is not required to use expert testimony, and social workers and caseworkers may offer evaluations as well. *Id.* Ultimately, the concern is the needs and welfare of a child. *Id.* Where there is no evidence of a bond between the parent and child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d 753, 763 (Pa. Super. 2008).

We have noted:

[b]efore granting a petition to terminate parental rights, it is imperative that a trial court carefully consider the intangible dimension of the needs and welfare of a child—the love, comfort, security, and closeness—entailed in a parent-child relationship, as well as the tangible dimension. Continuity of relationships is also important to a child, for whom severance of close parental ties is

- 12 -

usually extremely painful. The trial court, in considering what situation would best serve the child[ren]'s needs and welfare, must examine the status of the natural parental bond to consider whether terminating the natural parents' rights would destroy something in existence that is necessary and beneficial.

**Z.P.**, 994 A.2d at 1121 (quoting **In re C.S.**, 761 A.2d 1197, 1202 (Pa. Super. 2000)).

Here, the orphans' court found that termination would best serve Child's needs and welfare. Father's counsel does not raise any point of evidence that could arguably support Father's appeal in this regard.

The evidence introduced at the hearing established that there is no bond between Child and Father. Child has significant special needs, requiring twenty-four hour supervision and intervention services likely for the rest of his life. In contrast, Child's foster family has expressed a desire to adopt Child, has adopted three other special needs children, and has fostered twenty-three children prior to Child. The bonding report indicates that Child is strongly bonded with his foster family, particularly his foster mother. Child's foster parents care for him and provide for his needs appropriately, and Child has made some progress with vocalizing words and with his daily behaviors in their home.

As required by Section 2511(b), the court weighed the evidence of any bond between Father and Child against Child's need for permanency and stability, and determined that termination would best serve Child's needs and welfare. The court noted the complete lack of any relationship between Father and Child, and Child's significant medical needs. Accordingly, the court

concluded that Child's need for the permanency and stability that foster parents provided could best serve Child's needs. **See Z.P.**, 994 A.2d at 1121; **K.Z.S.**, 946 A.2d at 763.

When an attorney files an **Anders** brief, the appellate court must conduct an independent review of the record to determine whether there are any meritorious issues counsel could have raised. **See Santiago**, 978 A.2d at 355 n.5. We have reviewed the record and conclude that there are no issues of merit to be raised.

Based on the foregoing, we grant counsel's petition to withdraw and affirm the Decree involuntarily terminating Father's parental rights.

Counsel's Petition to withdraw granted. Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/23/19