J-S25005-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE ADOPTION OF: A.S., A MINOR | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.S., MOTHER | : : : : : : : | |
| | : | No. 98 MDA 2020 |

Appeal from the Decree Entered December 23, 2019
In the Court of Common Pleas of Cumberland County Orphans' Court at
No(s):  61 Adoptions 2019

BEFORE:  LAZARUS, J., DUBOW, J., and KING, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED JUNE 12, 2020**

J.S. (Mother) appeals from the trial court's decree involuntarily terminating her parental rights to her minor daughter, A.S. (Child) (born 12/12).  Counsel has also filed a petition to withdraw on appeal, pursuant to **Anders v. California**, 386 U.S. 738 (1967) and **In re Adoption of V.E.**, 611 A.2d 1267 (Pa. Super. 1992).  After careful review, we affirm based upon the well-authored trial court opinion and grant counsel's petition to withdraw.

Child is autistic and requires special services for her cognitive development.  In 2015, Cumberland County Children and Youth Services (CYS) received a referral that Mother[1] was using drugs and not properly

---

[1] CYS was unable to confirm the identity of Child's biological father until December 11, 2019.  N.T. Termination Hearing, 12/20/19, at 28.  At the time of the termination hearings, Father was incarcerated in Lebanon County on 25 felony charges and 2 misdemeanor charges.  **Id.** at 29.  His parental rights to Child were also terminated.  He, however, is not a party to this appeal.

supervising Child. After an investigation into the matter, the case was closed in February 2015. In early 2018, CYS received another referral, this time regarding Child, when it was reported that Child was sexually acting out. Child received support services and the case was closed in February 2018. On March 26, 2018, CYS again became involved with Mother and Child, after Mother was incarcerated[2] and unable to care for Child. CYS obtained legal and physical custody of Child and placed Child in foster care.[3] Child was adjudicated dependent on April 9, 2018.

In late April 2018, CYS developed a permanency plan (Plan) for Mother in order to achieve reunification with Child. Mother's goals and objectives under the Plan consisted of the following: obtain and maintain stable housing; cooperate with CYS; comply with drug and alcohol treatment recommendations; submit to random drug screens; address mental health issues, obtain mental health evaluation and follow recommendations; address parenting concerns; and comply with probation to avoid re-incarceration. Mother initially struggled to meet her housing goal, living in friends' homes, hotels and the YMCA in between periods of incarceration.[4] Mother was

---

[2] Mother had been charged with driving without a license and hindering apprehension. Just one month earlier, Mother had been charged with simple assault and possession of drug paraphernalia.

[3] At the time of the termination hearings, Child was still living in the same foster home, a pre-adoptive placement.

[4] Mother, however, reported that she obtained her own residence in September 2019.

inconsistent in obtaining drug screens, having missed 7 screens and having failed to call and check-in with her supervisor for 19 consecutive days. Mother did, however, test negative on 13 drug screens. While Mother completed multiple drug and alcohol evaluations, Mother chose not to follow through with recommended drug and alcohol treatment. Mother also completed a mental health evaluation in June 2019, was diagnosed with bipolar disorder and was prescribed lithium. However, Mother was unsuccessfully discharged from mental health treatment counseling due to her re-incarceration.

Mother was inconsistent in attending her scheduled visits with Child. While transportation to the visits was an issue for Mother, CYS provided her with a bus pass to alleviate this problem. Mother did participate in some school-related meetings addressing Child's Individualized Education Program (IEP). Phone calls between Mother and Child did not go well; Mother often used inappropriate language and yelled at Child for not talking to her.

With regard to parenting skills, Mother completed a parenting assessment and parenting program in July 2018. Alternative Behavior Consultants (ABC) recommended Mother complete a second parenting program after she remained sober and was consistent with her Plan goals for at least three months. Mother was unsuccessful with remaining sober and compliant for that time period; therefore, she did not progress to the next level of parenting programs.

Mother likewise struggled to comply with the conditions of her probation; she was re-incarcerated twice after being released from jail in

March 2018 – when Child was placed in foster care. Specifically, in December 2018, Mother twice testified positive for fentanyl while on probation, leading to her re-incarceration from January 5, 2019 until February 6, 2019. In August 2019, Mother was incarcerated again for outstanding warrants due to failing to pay fines related to a 2010 DUI. With regard to employment, Mother was unable to verify she had obtained a job, other than a one-day work stub from McDonalds.

On September 4, 2019, CYS filed a petition to involuntarily terminate Mother's parental rights to Child based upon 23 Pa.C.S. §§ 2511(a)(1), (2), (5), (8) and (b). The court held termination hearings on September 20, 2019, and December 20, 2019.[5] At the termination hearings Mother,[6] various CYS caseworkers, an ABC consultant, and Mother's county adult probation officer testified. On December 23, 2019, the trial court entered a decree terminating

---

[5] Child was represented by an attorney, Damian J. DeStefano, Esquire, and a Guardian *Ad Litem* (GAL), Tammi Blackburn, Esquire, at the termination hearings. *See* 23 Pa.C.S. § 2313(a) (children have statutory right to counsel in contested involuntary termination proceedings) and *In re K.R.*, 200 A.3d 969 (Pa. Super. 2018) (en banc), *but see In Re: T.S., E.S.*, 192 A.3d 1080, 1092 (Pa. 2018) ("[D]uring contested termination-of-parental-rights proceedings, where there is no conflict between a child's legal and best interests, an attorney-guardian *ad litem* representing the child's best interests can also represent the child's legal interests.").

[6] At the second termination hearing, there were connection problems with Mother over her cellular telephone.

Mother's parental rights pursuant to sections 2511(a)(1), (5), (8), and (b) of the Adoption Act.[7]

Mother filed a timely notice of appeal and Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. On March 18, 2020, counsel filed a petition for leave to withdraw as counsel pursuant to **Anders** and **V.E.**. In **V.E.**, our Court stated:

> Counsel appointed to represent an indigent parent on a first appeal from a decree involuntarily terminating his or her parental rights, may, after a conscientious and thorough review of the record, petition this court for leave to withdraw representation if he or she can find no issues of arguable merit on which to base the appeal. Given the less stringent standard of proof required and the quasi-adversarial nature of a termination proceeding in which a parent is not guaranteed the same procedural and evidentiary rights as a criminal defendant, the court holds that appointed counsel seeking to withdraw representation must submit an *advocates* brief, as contemplated in **Anders supra**[.]

**In re Adoption of V.E.**, 611 A.2d at 1275. **See also In re Adoption of R.I.**, 312 A.3d 601, 602 (Pa. 1973) ("the logic behind . . . an individual in a criminal case being entitled to representation by counsel at any proceeding that may lead to 'the deprivation of substantial rights. . . is equally applicable to a case involving an indigent parent faced with the loss of her child.").

In his **Anders** brief,[8] counsel raises the following issues for our consideration:

---

[7] 23 Pa.C.S. §§ 2101-2938.

[8] CYS and counsel for Child have chosen to not file briefs on appeal.

> (1) Whether the [t]rial [c]ourt abused its discretion and committed an error of law when it found, despite a lack of clear and convincing evidence, and despite not allowing [Mother] a meaningful opportunity to participate in the hearing, that enough grounds existed for a termination of [Mother's] parental rights under [s]ection 2511(a) of the Adoption Act, 23 Pa.C.S.[] §[]2511(a).
>
> (2) Whether the [t]rial [c]ourt abused its discretion and committed an error of law in terminating [Mother's] parental rights when the conditions which led to the removal or placement of the child no longer existed or were substantially eliminated, thus contravening sections 2511(a) and (b) of the Adoption Act, [23] Pa.C.S.[] §[§][]2511(a), (b).
>
> (3) Whether the [t]rial [c]ourt abused its discretion and committed an error of law in determining it would be in the child's best interest to have parental rights terminated, when it failed to primarily consider the child's developmental, physical and emotional needs and welfare, thus contravening [s]ection 2511(b) of the Adoption Act, 23 Pa.C.S.[] §[]2511(b).

Mother's Brief at 4-5.

Before reaching the merits of Mother's appeal, we must first address counsel's petition to withdraw. To withdraw under **Anders**, counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [**Anders**] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.[9]

**Commonwealth v. Cartrette**, 83 A.3d 1030, 1032 (Pa. Super. 2013) (en banc) (citing **Commonwealth v. Lilley**, 978 A.2d 995, 997 (Pa. Super. 2009)). With respect to the third requirement of **Anders**, that counsel inform

---

[9] Mother has not raised any additional arguments on appeal.

the appellant of his or her rights in light of counsel's withdrawal, this Court has held that counsel must "attach to [his or her] petition to withdraw a copy of the letter sent to their client advising him or her of their rights." *Commonwealth v. Millisock*, 873 A.2d 748, 752 (Pa. Super. 2005).

> An *Anders* brief must also comply with the following requirements:
>
> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Commonwealth v. Santiago*, 978 A.2d 349, 361 (Pa. 2009). Finally, this Court must "conduct an independent review of the record to discern if there any additional, non-frivolous issues overlooked by counsel." *Commonwealth v. Flowers*, 1133 A.3d 1246, 1250 (Pa. Super. 2015) (footnote omitted).

Instantly, Mother's counsel filed a petition to withdraw, certifying that he reviewed the record and determined that Mother's appeal is frivolous. Counsel also filed a brief, which includes a summary of the history and facts of the case, potential issues that could be raised by Mother, and counsel's assessment of why those issues are wholly frivolous, with citations to relevant legal authority. Counsel has also provided Mother with a copy of the brief and a letter advising her of her right to retain new counsel or raise additional issues

*pro se*. Accordingly, we find that counsel has substantially complied with the requirements of **Anders** and **Santiago**, and, thus, may review the issues raised by counsel and also conduct our independent review of the record.

Our standard of review in termination of parental rights cases is well-settled:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

**In re T.S.M.**, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

After reviewing Mother's brief, the certified record, including the notes of testimony from the termination hearings, and relevant case law, we agree with the trial court's decision to involuntarily terminate Mother's parental rights to Child. Moreover, our independent examination of the record indicates that there are no other non-frivolous claims that can be raised. **V.E.**, **supra**.

Mother has failed to show that she has the ability to provide the safety, stability and permanency necessary to meet Child's special needs. In the 21 months that Child has been out of Mother's care, Mother has failed to make "significant strides toward her goals or doing anything notably different[] than

- 8 -

she had been doing over the preceding 21 months." Trial Court Opinion, 2/13/20, at 15. While Child's GAL testified that Child loves Mother and has a bond with her, she also testified that it is in Child's best interest to terminate Mother's parental rights where Mother's inconsistency in fulfilling her Plan goals and lack of parenting is detrimental to Child's well-being. **See In re N.A.M.**, 33 A.3d 95, 104 (Pa. Super. 2011) ("The mere existence of an emotional bond does not preclude the termination of parental rights."); **see also In re Z.P.**, 994 A.2d 1108, 1121 (Pa. Super. 2010) (under section 2511(b), adequate consideration must be given to needs and welfare of child; parent's own feelings of love and affection for a child, alone, do not prevent termination of parental rights).

Child has been residing with foster parents, who are prospective adoptive parents,[10] since March 2018. Child has bonded with her foster family, which includes three foster siblings;[11] her foster family provides for her special needs, including a structured home environment that manages her behavioral issues.[12] **See In re Adoption of R.J.S.**, 901 A.2d 502, 513 (Pa.

---

[10] On December 19, 2019, foster parents filed a report of intention to adopt Child. **See** 23 Pa.C.S. § 2531.

[11] Foster Mother testified that her three biological children and Child "are like sisters and brothers basically." N.T. Termination Hearing, 12/20/19, at 44.

[12] Foster Mother testified that when Child first came into her care, she exhibited baby-like behavior. N.T. Termination Hearing, 12/20/19, at 52. Foster Mother testified that since that time, Child has progressed and acts

Super. 2006) ("The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future.").

We therefore, rely upon the opinion authored by the Honorable Christylee I. Peck, in affirming the decree involuntarily terminating Mother's parental rights to Child.  We ask the parties to attach a copy of Judge Peck's decision in the event of further proceedings in the matter.  We also conclude that Mother's appeal is frivolous and grant counsel's motion to withdraw.

Decree affirmed.  Petition to withdraw granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/12/2020

---

more age-appropriate.  *Id.*  Foster Mother also testified that after visits with Mother, Child reverts back to acting like a baby or little toddler.  *Id.* at 52-53.