J-S09031-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: C.M., A MINOR | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: S.M., FATHER | : : : : : : : : | |
| | : | No. 3150 EDA 2024 |

Appeal from the Decree Entered October 28, 2024
In the Court of Common Pleas of Pike County Civil Division at No(s): 13-2024-OA

BEFORE: LAZARUS, P.J., BECK, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                   **FILED MARCH 19, 2025**

S.M. ("Father") appeals from the decree entered in the Court of Common Pleas of Pike County, which involuntarily terminated his parental rights to his minor child, C.M. ("Child") (born in May of 2019), pursuant to Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938.[1] Father's appointed counsel, Lindsey Collins, Esquire, has filed an **Anders**[2] brief, along with a petition

_____

[*] Former Justice specially assigned to the Superior Court.

[1] We note biological Mother voluntarily consented to the relinquishment of her parental rights as to Child, and she is not a party to this appeal.

[2] **See Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. Santiago**, 602 Pa. 159, 978 A.2d 349 (2009). The **Anders** principles and process have been extended to appeals involving the termination of parental rights. **See In re V.E.**, 611 A.2d 1267 (Pa.Super. 1992) (extending **Anders** briefing requirements to termination of parental rights appeals involving indigent parents represented by court-appointed counsel).

seeking to withdraw from representing Father on appeal. After a careful review, we affirm the trial court's decree and grant counsel's petition to withdraw.

The relevant facts and procedural history are as follows: Child suffers from severe developmental delays, is non-verbal, and is on the autism spectrum. In December of 2022, a Pike County Children and Youth ("CYS") caseworker went to Father's home, which he shared with his girlfriend, her two children, and Child.[3] During the visit, the CYS caseworker observed on the outside of Child's bedroom door a padlock, which, although unlocked, prevented Child from opening the door. The CYS caseworker opened the door and observed an unlit room with a mattress on the floor and feces smeared on the wall.

On February 13, 2023, a CYS caseworker visited Father's home unannounced, observing once again a padlock on Child's bedroom door. N.T., 12/20/23, at 8. CYS immediately called the Pennsylvania State Police. *Id.* Upon arrival, the police conducted a search of the home and discovered Child padlocked in the unlit bedroom. *Id.* Child was naked and covered in feces. *Id.* The walls were smeared with feces. *Id.* A bare mattress, lying on the

_____

[3] The caseworker, who had been involved with Father's girlfriend's family since April of 2022, was at the home to provide follow-up services, as well as to investigate reports of unsupervised children in the home, dental neglect, and the children's behavior. *See* CYS Emergency Shelter Care Application, 2/14/23, at 4.

floor of the room, was covered in fecal matter, urine stains, and dead bugs. *Id.* Father and his girlfriend were arrested. At this time, biological Mother was involved in an unrelated dependency proceeding in Columbia County due to an incident involving her infant child.

On February 13, 2023, the trial court granted CYS emergency protective custody of Child. On February 16, 2023, the trial court entered a shelter care order granting physical and legal custody of Child to CYS, as well as placing Child in foster care with his current foster family.[4] On February 17, 2023, CYS filed a dependency petition, and an adjudicatory hearing was held on February 27, 2023.

Following the hearing, the trial court entered an order declaring Child dependent; concluding Child was the victim of abuse having "suffered from serious physical neglect which threatened [C]hild's life, development[,] and health," 23 Pa.C.S.A. § 6303; and determining that Father was Child's abuser and "responsible for [Child's] serious physical neglect and endangerment." Trial Court Order, filed 2/27/23.

_____

[4] This Court previously recognized that Child's foster family is an adoptive resource and has specialized knowledge of caring for children with developmental delays/disabilities. *See In the Interest of C.M.*, No. 362 EDA 2024 (Pa.Super. filed 7/30/24) (unpublished memorandum).

In June of 2023, Father pled guilty to three counts of endangering the welfare of children,[5] and pursuant to his negotiated plea agreement, he was sentenced in August of 2023 to three concurrent terms of 14 to 60 months in prison, with 185 days of credit for time served.

On August 2, 2023, the trial court held a permanency hearing, after which it concluded visitation between Child and Father would be contrary to Child's safety and well-being. Trial Court Order, filed 8/2/23. The trial court found Father was minimally compliant with the service plan and had made no progress toward alleviating the conditions leading to Child's placement. *Id.*

On October 6, 2023, CYS filed a petition to change the placement goal to adoption. On December 20, 2023, the trial court held a permanency review and goal change hearing. At the end of the hearing, the trial court granted CYS's goal change request. On December 21, 2023, the trial court entered a permanency review order reflecting the changed goal; noted Father, who was incarcerated at SCI Dallas with no definitive release date, made no progress in alleviating the circumstances leading to Child's original placement; found Father minimally compliant with the permanency plan; and found CYS made reasonable efforts to finalize Child's permanency plan.

_____

[5] We note the three counts relate to each child in the house under Father's care at the time of his arrest: Child and Father's girlfriend's two children. *In the Interest of C.M*, *supra*. Moreover, we note Father has a prior conviction, not related to Child, for unlawful contact with a minor, and as a result thereof, he has been deemed a Tier II sex offender. *See id.*

Father filed a timely appeal from the trial court's December 21, 2023, order changing the placement goal from a concurrent goal of reunification and adoption to adoption alone. On July 30, 2024, this Court affirmed the trial court's December 21, 2023, order.[6] *See In the Interest of C.M.*, *supra*.

On August 21, 2024, CYS filed a petition for the involuntary termination of Father's parental rights as to Child. Specifically, CYS sought termination under 23 Pa.C.S.A. § 2511(a)(5), (8) and (b). CYS noted Christian Weed, Esquire, was Child's court-appointed guardian *ad litem* ("GAL"), and CYS indicated the facts and circumstances demonstrate no conflict such that Attorney Weed should also be appointed Child's legal counsel. The trial court set October 23, 2024, as the hearing date for the involuntary termination proceedings, and finding no conflict between the best and legal interests of Child, the trial court appointed the GAL, Attorney Weed, as legal counsel for Child.

On October 23, 2024, Father, along with his counsel, and Attorney Weed, on behalf of Child, appeared for the termination hearing at which CYS caseworker Bernadette Parry and Father testified. Specifically, Ms. Parry testified she has been involved in the instant matter since the end of March of 2023. N.T., 10/23/24, at 5. Ms. Parry indicated she was involved with the removal of Child from Father's home on February 13, 2023. *Id.* at 6. She

_____

[6] Father did not seek review with our Supreme Court.

confirmed that she observed a padlock on Child's bedroom door, and Child, who was at the time three years old, was found naked in the unlit bedroom. *Id.* The room and Child were covered in feces. *Id.* Ms. Parry testified Child, who is autistic, continues to be nonverbal. *Id.*

Ms. Parry testified Child was immediately placed with his current foster parents, and Father was arrested. *Id.* at 7. Ms. Parry indicated Father continues to be incarcerated at SCI Dallas in connection with criminal charges stemming from his abuse of Child. *Id.* Ms. Parry testified Father has been unable to alleviate the grounds leading to the dependency of Child, and he is unable to provide a safe environment for Child. *Id.* at 8.

Ms. Parry testified that CYS supports the termination of Father's parental rights, as well as keeping Child in his foster home, which is a pre-adoptive home. *Id.* Ms. Parry testified Child has "thrived" in his foster home, and the foster parents want to adopt him. *Id.* She opined that it is in Child's best interest for him to be adopted by his foster parents. *Id.*

On cross-examination, Ms. Parry testified she had one conversation with Father since Child's goal was changed to adoption. *Id.* at 9. She noted she called the prison twice, but she was unable to be transferred to Father. *Id.* at 12-13. Ms. Parry noted Father testified at the permanency review hearing that his earliest release date for parole was April of 2025. *Id.* at 13. Moreover, he has a requirement to complete a sex offender low intensity

program. *Id.* His sex offender program would be completed in September or October of 2025 at the earliest. *Id.*

Ms. Parry testified that Child attends primary school, and he receives behavioral services through Pathways at school, as well as at his foster home. *Id.* at 14. Ms. Parry indicated she has observed Child interacting with his foster parents, and he is bonded with them. *Id.* She indicated she has never seen Child interact with Father, and to the best of CYS's knowledge, Child and Father have no bond. *Id.* Ms. Parry noted that, as of the time of the termination hearing, Child has been living with his foster parents continuously since his removal from Father's home on February 13, 2023. *Id.* at 15.

Father, who was permitted to participate at the termination hearing via telephone, confirmed he is incarcerated at SCI Dallas. *Id.* at 16. He testified he is not sure when he might be paroled, and he is currently in a sex offender program, which is scheduled to last eight to twelve months. *Id.* Father testified that he is enrolled in various voluntary programs in prison. *Id.* at 17. For example, he participates in a Shining Light Academy re-entry program, a mental health awareness program, and a healthy relationships program. *Id.* He also took a "flagger course," so that he can be "certified to be a flagger for employment." *Id.*

Father testified that, after he is released from prison, he plans to reside with his mother in Berwick, Pennsylvania. *Id.* at 18. He admitted his mother was never certified to be a kinship resource for Child; however, he is hoping

he and Child can reside with her in the future. *Id.* Father admitted he had no communication with CYS in recent months, and he provided them with neither documentation nor updates. *Id.*

Father testified that he believes the prison programs, which he has voluntarily taken, will help him change his way of thinking and acting. *Id.* at 19. He indicated he wants to be a "better person" for himself and Child. *Id.* Father testified he took responsibility for the circumstances that led to Child being removed from his care. *Id.* at 20. He testified he believes he can provide a safe environment for Child after his release from prison, and there is an elementary school with an autism program near his mother's home. *Id.* He testified he has "two jobs lined up" for when he gets out of prison, and he desires a chance to be a good parent to Child. *Id.*

On cross-examination, Father admitted he pled guilty in June of 2023 to three counts of endangering the welfare of children. *Id.* He also admitted that he has a prior conviction unrelated to Child, and as a result thereof, he is classified as a Tier II sex offender. *Id.* He admitted that he is required to complete a sex offender low intensity program, which will take eight to twelve months, as well as a six week "booster program," before he can appear before the parole board. *Id.* at 21-22.

Father admitted he has not seen Child since February 13, 2023, when he was removed from his home. *Id.* He acknowledged that he has "no idea" of Child's "day-to-day life" or how his autism is treated. *Id.* at 23.

At the conclusion of the hearing, by decree entered on October 28, 2024, the trial court terminated Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(5), (8), and (b). Father filed a timely counseled notice of appeal, as well as a contemporaneous concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The trial court filed a responsive opinion. Thereafter, on January 30, 2025, Father's counsel, Attorney Collins, filed a petition to withdraw her representation, as well as an *Anders* brief.

On appeal, counsel raises the following issues on behalf of Father:

I. Are there any non-frivolous issues preserved for appeal [preventing counsel's withdrawal in this matter]?

II. Whether the trial court erred as a matter of law in determining that Pike County Children and Youth Services had met its burden of proof in the involuntary termination of parental rights in this matter[?]

III. Whether the trial court erred as a matter of law in determining that the termination of parental rights of Appellant, [S.M.], was in the best interests of the subject minor child[?]

*Anders* Brief at 6.

Our standard of review is well-settled:

In an appeal from an order terminating parental rights, our scope of review is comprehensive: we consider all the evidence presented as well as the trial court's factual findings and legal conclusions. However, our standard of review is narrow: we will reverse the trial court's order only if we conclude that the trial court abused its discretion, made an error of law, or lacked competent evidence to support its findings. The trial judge's decision is entitled to the same deference as a jury verdict.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted). Further, we have stated:

> Where the hearing court's findings are supported by competent evidence of record, we must affirm the hearing court even though the record could support an opposite result. We are bound by the findings of the trial court which have adequate support in the record so long as the findings do not evidence capricious disregard for competent and credible evidence. The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence. Though we are not bound by the trial court's inferences and deductions, we may reject its conclusions only if they involve errors of law or are clearly unreasonable in light of the trial court's sustainable findings.

*In re M.G.*, 855 A.2d 68, 73-74 (Pa.Super. 2004) (citations omitted).

Before we begin our substantive analysis, we must address the petition to withdraw as counsel, which was filed by Father's counsel, Attorney Collins. When counsel files an *Anders* brief, this Court may not review the merits without first addressing counsel's request to withdraw. *Commonwealth v. Washington*, 63 A.3d 797, 800 (Pa.Super. 2013). We review Attorney Collins' *Anders* brief for compliance with the requirements set forth by our Supreme Court in *Santiago*, *supra*.

> Counsel must:
>
> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, *supra*, 978 A.2d at 361.

Additionally, pursuant to *Commonwealth v. Millisock*, 873 A.2d 748 (Pa.Super. 2005), and its progeny, "[c]ounsel also must provide a copy of the *Anders* brief to [her] client." *Commonwealth v. Orellana*, 86 A.3d 877, 880 (Pa.Super. 2014). Counsel must attach to the brief a letter that advises the client of his right to: "(1) retain new counsel to pursue the appeal; (2) proceed *pro se* on appeal; or (3) raise any points that the appellant deems worthy of the court's attention in addition to the points raised by counsel in the *Anders* brief." *Id.* (internal quotation marks and citation omitted). "Once counsel has satisfied the above requirements, it is then this Court's duty to conduct its own review of the trial court's proceedings and render an independent judgment as to whether the appeal is, in fact, wholly frivolous." *Commonwealth v. Goodwin*, 928 A.2d 287, 291 (Pa.Super. 2007) (*en banc*) (quotation omitted).

Here, Attorney Collins filed a petition to withdraw, and, therein, she confirmed she sent Father a letter informing him of his right to obtain new counsel, or to proceed *pro se*, and explained that Father may raise any additional arguments with this Court. A copy of this letter is attached to the petition to withdraw.[7] *See* Petition to Withdraw, filed 1/30/25.

---

[7] We note Father did not file a brief with privately retained counsel or *pro se*.

- 11 -

In her **Anders** brief, Attorney Collins sets forth the relevant history of the case, as well as her reasons for concluding that Father's appeal is wholly frivolous. Attorney Collins indicates in her petition that a copy of this brief was forwarded to Father. **See** Petition to Withdraw, filed 1/30/25. Accordingly, we conclude that Attorney Collins has complied with the technical requirements of **Anders**, **Santiago**, and **Millisock**. We, therefore, proceed with our independent review of the record and the issues presented on Father's behalf.

The involuntary termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis. The trial court must initially determine whether the conduct of the parent warrants termination under Subsection 2511(a). Only if the court determines that the petitioner established grounds for termination under Subsection 2511(a) does it then engage in assessing the petition under Subsection 2511(b), which involves a child's needs and welfare. **In re T.S.M.**, 620 Pa. 602, 71 A.3d 251, 267 (2013). To involuntarily terminate parental rights, the petitioner must prove grounds under both Subsections 2511(a) and (b) by clear and convincing evidence. **Id.**

Instantly, the trial court terminated Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(5), (8), and (b). In order to affirm the termination of parental rights, this Court need only agree with the trial court's findings

under any one enumerated Subsection of 2511(a), as well as 2511(b). ***See***

***In re B.L.W.***, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*).

In this case, we review the decree pursuant to Section 2511(a)(8) and

(b), which provide as follows.[8]

> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> > (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.
>
> . . .
>
> **(b) Other considerations**.—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(8), (b) (bold in original).

Pursuant to Section 2511(a)(8), the petitioner must prove (1) the child

has been removed from parental care for 12 months or more; (2) the

_____

[8] Based on this disposition, we need not consider Father's issues with respect to Section 2511(a)(5). ***See In re Adoption of K.M.G.***, 219 A.3d 662, 672 (Pa.Super. 2019) (*en banc*).

conditions which led to the removal or placement of the child continue to exist;

and (3) termination of parental rights would best serve the needs and welfare

of the child. This Court has explained:

> Unlike other subsections, § 2511(a)(8) does not require the court to evaluate a parent's willingness or ability to remedy the conditions that led to the placement of the children. *In re M.A.B.*, 166 A.3d 434, 446 (Pa.Super. 2017). "[T]he relevant inquiry" regarding the second prong of § 2511(a)(8) "is whether the conditions that led to removal have been remedied and thus whether reunification of parent and child is imminent at the time of the hearing." *In re I.J.*, 972 A.2d 5, 11 (Pa.Super. 2009). Further, the Adoption Act prohibits the court from considering, as part of the § 2511(a)(8) analysis, "any efforts by the parent to remedy the conditions described [in the petition] which are first initiated subsequent to the giving of notice of the filing of the petition." 23 Pa.C.S.A. § 2511(b).

> Although § 2511(a) generally focuses on the behavior of the parent, the third prong of § 2511(a)(8) specifically "accounts for the needs of the child." *In re C.L.G.*, 956 A.2d 999, 1008-09 (Pa.Super. 2008) (*en banc*). This Court has recognized "that the application of [§ 2511(a)(8)] may seem harsh when the parent has begun to make progress toward resolving the problems that had led to the removal of [his] children." *In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa.Super. 2006).

>> However, by allowing for termination when the conditions that led to removal of a child continue to exist after a year, the statute implicitly recognizes that a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future. Indeed, we work under statutory and case law that contemplates only a short period of time…in which to complete the process of either reunification or adoption for a child who has been placed in foster care.

*In re M.E.*, 283 A.3d 820, 832 (Pa.Super. 2022) (citation omitted).

- 14 -

Section 2511(b) requires the court to "give primary consideration to the developmental, physical and emotional needs and welfare of the child" when considering whether to involuntarily terminate parental rights. 23 Pa.C.S.A. § 2511(b). Our Supreme Court, in *In re E.M.*, 533 Pa. 115, 620 A.2d 481 (1993), first recognized that the "emotional needs and welfare" analysis under Section 2511(b) should include, in part, the child's bond with his or her parent. In doing so, the Court later articulated that the effect on the child of severing a bond with a parent requires "a determination of whether the bond is necessary and beneficial to the child, *i.e.*, whether maintaining the bond serves the child's developmental, physical, and emotional needs and welfare." *In the Interest of K.T.*, ___ Pa. ___, 296 A.3d 1085 (2023).

In concluding CYS proved the grounds for termination, by clear and convincing evidence, under Subsections 2511(a)(8) and (b), the trial court relevantly indicated the following:

> Child was removed from [Father] on February 13, 2023, and Child has been out of [Father's] care and control since that time. Child was removed when the Agency discovered that Child, who has significant special needs, was being locked in an unlit, uninhabitable room where he was found naked and covered in his own feces. [Father] is currently serving a sentence of fourteen to sixty months for the crimes of which Child was a victim. The Superior Court previously upheld [the trial court's] determination that [Father] posed a grave threat to Child.
>
> [As to] whether termination would best serve "the developmental, physical, and emotional needs and welfare of the child,"…[the trial court] conclusively determined that it would. Child has been flourishing in the care of his pre-adoptive foster family. Having had the opportunity to observe Child's development firsthand since [Child's] removal from [Father], the [trial court judge], who has presided over the dependency matter

as well as this termination of parental rights matter, is hard pressed to find words to adequately express how impressed she is [with Child's progress with his foster family]. Child appears well-nourished, happy, and well-dressed. This [] non-verbal child is learning [ways] to express himself. Child, who did not appear to have any bond with [Father], is bonded with his pre-adoptive family.

Trial Court Opinion, filed 12/6/24, at 2.

We find no abuse of discretion. *In re L.M.*, *supra* (setting forth our standard of review). With respect to the first prong of Section 2511(a)(8), the record demonstrates Child has been removed from parental care for twelve months or more. Specifically, with the assistance of the police, CYS removed Child from Father's home on February 13, 2023, and since that date, Child has lived continuously with his foster family.

With respect to the second prong of Section 2511(a)(8), we agree with the trial court that CYS met its burden of proving the conditions which led to the removal or placement of Child continue to exist. *See In re T.S.M.*, *supra* (setting forth the burden of proof in termination cases). Specifically, Child was removed from Father's care due to Father's serious physical neglect of Child. Since that time, Father has been serving a prison term in connection with his criminal endangerment of Child. Father admitted he is uncertain when he will be released from prison. There is ample evidence demonstrating Father is unable to provide a healthy and safe environment for Child or even provide for Child's basic needs. Thus, CYS met the second prong of Section 2511(a)(8).

With respect to the third prong of Section 2511(a)(8), we agree with the trial court that CYS proved termination of Father's parental rights will best serve the needs and welfare of Child, who has special developmental needs. *See In re T.S.M.*, *supra* (setting forth the burden of proof). Child is thriving with his foster parents, who want to adopt him. On the other hand, there is no evidence of a bond between Child and Father. Moreover, since living with his foster parents, Child has been attending school, as well as receiving behavioral services. The trial court determined that Child's need for permanency is paramount in this case, particularly in light of Child's diagnosis, including being on the autism spectrum. We discern no abuse of discretion. *In re L.M.*, *supra*.

Having determined the trial court properly found CYS met its burden under Section 2511(a)(8), we next examine whether termination is in the best interests of Child under Section 2511(b). *See In re C.L.G.*, 956 A.2d at 1009 (holding that, after we resolve the analysis of the "needs and welfare of the child" under Section 2511(a)(8), we must then address the "needs and welfare of the child" under Section 2511(b)). Bond, permanency, stability, and all other intangibles are "all of 'primary' importance in the Section 2511(b) analysis." *In the Interest of K.T.*, *supra*, 296 A.3d at 1109. It is within the province of the trial court to "consider the totality of the circumstances when performing a needs and welfare analysis." *Id.* We will not disturb such an assessment if the trial court's factual findings are supported by the record.

***See id.***

Here, as indicated *supra*, the trial court determined there is no evidence of a bond between Child and Father. Child has neither seen nor talked to Father since he was removed from Father's home on February 13, 2023. On the other hand, Child is bonded with his pre-adoptive foster family, who provide Child with permanency and stability. Simply put, Child is now thriving. Accordingly, in considering the totality of the circumstances, we discern no abuse of discretion by the trial court in terminating Father's parental rights under Section 2511(b).

While Father indicated he would like a "second chance" to parent Child after he is released from prison, we note "a child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting." ***In re Z.S.W.***, 946 A.2d 726, 732 (Pa.Super. 2008). Father's stated desire to parent Child does not require that Child be put in harm's way or indefinitely postpone adoption. ***In re Z.P.***, 994 A.2d 1108 (Pa.Super. 2010). ***See In Interest of Lilley***, 719 A.2d 327 (Pa.Super. 1998) (holding a parent's basic constitutional right to custody and rearing of his or her child is converted, upon parent's failure to fulfill parental duties, to child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment).

Finally, our review of the record does not reveal any non-frivolous issues overlooked by Attorney Collins. After our independent review, we conclude

that the evidence presented supports the trial court's decree involuntarily terminating Father's parental rights pursuant to Subsections 2511(a)(8) and (b). *See In re Z.P.*, *supra* (absent abuse of discretion, error of law, or insufficient evidentiary support for the lower court's decision, decree in termination of parental rights proceeding must stand). Thus, we affirm the trial court's decree and grant Attorney Collins' petition to withdraw her representation.

Decree affirmed. Petition to withdraw granted.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/19/2025