J-A01030-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: N.J.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: N.M., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 993 MDA 2021 |

Appeal from the Decree Entered June 17, 2021
In the Court of Common Pleas of Berks County Orphans' Court at No(s):
87034

| | | |
|---|---|---|
| IN RE: A.L.H. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: N.M.M. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 994 MDA 2021 |

Appeal from the Decree Entered June 17, 2021
In the Court of Common Pleas of Berks County Orphans' Court at No(s):
87035

| | | |
|---|---|---|
| IN RE: M.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: N.M., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 995 MDA 2021 |

Appeal from the Decree Entered June 17, 2021
In the Court of Common Pleas of Berks County Orphans' Court at No(s):
87036

| | | |
|---|---|---|
| IN RE: M.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |

J-A01030-22

APPEAL OF: N.M., MOTHER

:
:
:
:
:
:
:
:
:   No. 996 MDA 2021

Appeal from the Decree Entered June 17, 2021
In the Court of Common Pleas of Berks County Orphans' Court at No(s):
87309

BEFORE:  LAZARUS, J., NICHOLS, J., and KING, J.

MEMORANDUM BY LAZARUS, J.:         **FILED MARCH 09, 2022**

N.M. ("Mother") appeals from the decrees,[1] entered in the Court of Common Pleas of Berks County, Orphans' Court Division, terminating her parental rights to her minor children, N.J.H. (born May 2012), twins A.L.H. (born September 2018) and M.H., Jr.[2] (born September 2018), and M.H. (born January 2020) (collectively, "Children").[3]  Counsel has filed an **Anders**[4] brief

---

[1] We have, *sua sponte*, consolidated these appeals.  **See** Pa.R.A.P. 513; Pa.R.A.P. 2138.

[2] Two of the children have the initials "M.H."  To avoid confusion, we have added the suffix "Jr." to distinguish the older child from the younger one.

[3] The trial court contemporaneously terminated Mother's parental rights to a fifth child, M.L.McK.M.  Mother does not contest that order on appeal.

[4] **Anders v. California**, 386 U.S. 738 (1967).  **See In re V.E.**, 611 A.2d 1267 (Pa. Super. 1992) (extending **Anders** principle to appeals involving termination of parental rights and requiring counsel seeking to withdraw in such an appeal to do so only after conscientious and thorough review of record, petitioning court for leave to withdraw, and submitting **Anders** brief).

and accompanying petition to withdraw. After careful review, we affirm the decrees of the Orphans' Court and grant counsel's petition to withdraw.

N.M. and her family have been involved with Berks County Children and Youth Services ("BCCYS") since approximately September 2016 in connection with unstable housing, domestic violence, inappropriate parenting, and substance abuse issues. *See* Dependency Petitions, 9/7/18, at 6. On September 4, 2018, a City of Reading police officer found Mother passed out on the streets of Reading with N.J.H., A.L.H., and M.H., Jr. *See id.* The officer had to shake Mother to awaken her and believed that she had been smoking K2.[5] *See id.* On September 7, 2018, BCCYS petitioned for emergency custody of the three children, who were removed from Mother's care. After a hearing on October 4, 2018, the three children were adjudicated dependent, with physical and legal custody transferred to BCCYS. *See* Orders of Adjudication and Disposition, 10/4/18, at 2. The court ordered a primary goal of reunification with a concurrent goal of adoption. *See id.* Mother was ordered to comply with the following goals: parenting education; a mental health evaluation and any recommendations; a drug and alcohol evaluation and any recommendations; random urinalysis; casework services through BCCYS and any recommendations; establish and maintain stable and

_____

[5] K2, also known as "spice," is a synthetic version of tetrahydrocannabinol (THC), the psychoactive ingredient in marijuana, and is a mixture of plant material sprayed with synthetic psychoactive chemicals. *See* https://www.dea.gov/factsheets/spice-k2-synthetic-marijuana (last visited February 14, 2022).

appropriate housing and income; notify BCCYS of any changes in income or residence; sign all releases for all providers; visitation as scheduled and interact in an appropriate manner; and a domestic violence evaluation and any recommendations. *See id.*

In November 2018, BCCYS referred Mother for an Adult Alternatives to Violence Evaluation with Commonwealth Clinical Group ("CCG"). The CCG social worker recommended mental health counseling, domestic violence counseling, the Nurturing Parenting Program, a drug and alcohol evaluation and compliance with any treatment deemed necessary, and to follow all recommendations of CCG and BCCYS. *See* Adult Alternatives to Violence Evaluation, 12/15/18, at 8. Mother failed to attend five sessions of the Nurturing Parenting Program and, on January 10, 2019, was unsuccessfully discharged. *See* Aimee Halpin Letter, 1/14/19. She was also unsuccessfully discharged form Berks Counseling Center for failure to respond to requests to schedule appointments. *See* Berks Counseling Discharge Summary, 1/14/19, at 2.

On February 8, 2019, after a hearing, the court ordered that visitation between Mother and A.L.H. be suspended due to a therapeutic recommendation from A.L.H.'s therapist, Marta Smith. *See* Order, 2/8/19. Smith advised BCCYS caseworker Adrianne Wetzel that A.L.H. had reported that she did not want to visit with either of her parents and that A.L.H. gets angry with her foster mother for making her go on parental visits. *See* Email from Marta Smith to Adrianne Wetzel, 1/7/19. Smith reported that A.L.H.

became "highly anxious prior to visits and is relieved when visits are cancelled." *Id.* A.L.H. demonstrated "escalated, oppositional behaviors during visits" and had also begun exhibiting concerning behaviors in the home and community, such as difficulty falling asleep, nightmares, bedwetting, chewing on her bed, and oppositional defiance. *Id.*

At a permanency review hearing held on February 21, 2019, Mother was deemed to be moderately compliant with her permanency plan, but had made no progress toward alleviating the circumstances that necessitated the placement. *See* Permanency Review Recommendation, 2/21/19, at 1.

On March 22, 2019, Mother completed an Adult Mental Health Evaluation with CCG. Recommendations following the evaluation included mental health counseling, a psychiatric evaluation and compliance with any recommendations, domestic violence counseling, the Nurturing Parenting Program, and a drug and alcohol evaluation, including compliance with any recommended treatment. *See* Adult Mental Health Evaluation, 3/22/19, at 11. Mother completed a psychiatric evaluation with Larry A. Rotenberg, M.D., on July 11, 2019. Doctor Rotenberg diagnosed Mother with K2 use disorder with some months of sobriety, marijuana use disorder with uncertain time of sobriety, and paranoid personality disorder. *See* Report of Dr. Rotenberg, 7/11/19, at 8. Doctor Rotenberg found that Mother "takes absolutely no responsibility for her behavior." *Id.* at 9. He concluded that "[t]he idea that she could become a responsible parent seems, at best, farfetched," and that "one could not possibly contemplate returning any children to her care." *Id.*

Mother's youngest child, M.H., was born on January 17, 2020. Two days later, BCCYS received a report that M.H. was ready for discharge from the hospital and petitioned for—and received—emergency custody. *See* Order, 1/19/20. M.H. was subsequently adjudicated dependent and, on March 5, 2020, after a dispositional hearing, temporary legal and physical custody was transferred to BCCYS. *See* Dispositional Order, 3/5/20, at 1. Mother was given the following permanency goals: casework services through BCCYS and any recommendations; parenting education; mental health treatment and any recommendations; domestic violence treatment and any recommendations; random urinalysis; establish and maintain stable and appropriate housing and income; keep BCCYS informed regarding any changes in residence or income; visitation with M.H. as scheduled and act in an appropriate manner; and signing releases of information as requested. *See id.* at 2.

A permanency review hearing was held on March 16, 2020, at which Mother was found to be moderately compliant with her permanency plan, but had made only minimal progress towards alleviating the circumstances that necessitated the children's placement. *See* Permanency Review Orders, 3/17/20, at 1.

After a hearing on June 26, 2020, Mother's visitation rights as to N.J.H., M.H., Jr., and M.H. were suspended "based on Mother's current mental health status." Orders, 6/26/20. A permanency review hearing was held on July 20, 2020, at which Mother was deemed not compliant with her permanency plan and the court found she had made no progress towards alleviating the

circumstances that necessitated the children's placement. ***See*** Permanency Review Orders, 7/30/20, at 1.

On March 31, 2021, Mother was discharged from CCG for noncompliance with engagement and attendance. ***See*** CCG Client Discharge Summary, 3/31/21, at 2. Specifically, Mother had 24 cancellations/no-shows, followed by 1½ months of no-shows at the scheduled time. ***See id.*** In addition, between September 20, 2018 and February 22, 2021, Mother failed to attend a total of 65 drug screenings. ***See*** Redwood Toxicology Laboratory No-Show Report, 2/25/21. At the time of the termination hearing on May 10, 2021, Mother was not engaged in any casework services, and had failed to keep BCCYS apprised of her employment or housing situation. ***See*** N.T. Termination Hearing, 4/22/21, at 89-90. BCCYS caseworker Christine Esterly testified that her contact with Mother had been

> sporadic and[,] often times, honestly, nonsensical. I get random e-mails from her sometimes on the weekends, sometimes in the middle of the night[,] that don't make any sense. Specifically, I had one that said ["]red, white, blue["] with an exclamation point. I had one that just said ["]it's on.["] I had one that said[,] simply[, "]canceled.["] I had one that she included her name, but then also signed it from [Father]. So[,] it's been very difficult to communicate with her.

***Id.*** at 89.

On November 14, 2020, BCCYS filed petitions as to N.J.H., A.L.H., and M.H., Jr., seeking termination of Mother's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), (8), and (b). On July 22, 2020, BCCYS filed

a petition to terminate Mother's parental rights as to M.H. pursuant to sections 2511(a)(1), (2), (5), and (b).

The court held hearings on April 22 and May 10, 2021. Children were represented by attorney/guardian *ad litem* Gary Fronheiser, Esquire ("GAL").[6] Mother did not appear for the hearing,[7] although her counsel, Emily Cherniack, Esquire, was present. Prior to the hearing, BCCYS submitted Findings of Fact and Conclusions of Law; Mother's counsel stipulated to the Findings of Fact. *See* N.T. Termination Hearing, 4/22/21, at 15 ("I can stipulate that the Findings of Fact, which BCCYS is basing [its] termination hearing on, can be stipulated to.").

By orders dated June 17, 2021, the court involuntarily terminated Mother's parental rights to Children.[8] On July 14, 2021, Mother filed timely

---

[6] *See In Re: T.S., E.S.*, 192 A.3d 1080, 1092 (Pa. 2018) ("[D]uring contested termination-of-parental-rights proceedings, where there is no conflict between a child's legal and best interests, an attorney-guardian *ad litem* representing the child's best interests can also represent the child's legal interests.").

[7] Mother was duly served with the termination petition as to N.H., A.H., and M.H., Jr., in accordance with the requirements of 23 Pa.C.S.A. § 2513(b), by certified mail, return receipt requested, and regular mail. Mother was served with the petition as to M.H. by personal service, through BCCYS caseworker Esterly. *See* Proof of Notice, 3/11/21. At the termination hearing, counsel for BCCYS noted that Mother indicated to Esterly that she was aware of the hearing and would not be attending. *See* N.T. Termination Hearing, 4/22/21, at 12.

[8] The relevant grounds for termination, as set forth 23 Pa.C.S.A. § 2511, are as follows:

*(Footnote Continued Next Page)*

_____

(a) General rule.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

. . .

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

. . .

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

23 Pa.C.S.A. §§ 2511(a)(1), (2), (5) & (8).

notices of appeal and Mother's counsel contemporaneously filed Pa.R.A.P. 1925(c)(4) statements of her intent to file an *Anders*/*Santiago* brief with this Court.

On appeal, counsel seeks to withdraw her representation of Mother. Accordingly, before reaching the merits of Mother's appellate issues, we must first address whether counsel has properly sought to withdraw from this appeal. Pursuant to *Anders*, counsel must:

>   (1)   petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous;
>
>   (2)   furnish a copy of the [*Anders*] brief to the [appellant]; and
>
>   (3)   advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy [of] the court's attention.

*Commonwealth v. Cartrette*, 3 A.3d 1030, 1032 (Pa. Super. 2013) (en banc) (citation omitted). With respect to the third prong, this Court has held that counsel must "attach to [his or her] petition to withdraw a copy of the letter sent to [his or her] client advising him or her of their rights." *Commonwealth v. Millisock*, 873 A.2d 748 (Pa. Super. 2005). In addition, an *Anders* brief must comply with the following requirements:

>   (1)   provide a summary of the procedural history and facts, with citations to the record;
>
>   (2)   refer to anything in the record that counsel believes arguably supports the appeal;
>
>   (3)   set forth counsel's conclusion that the appeal is frivolous; and

> (4)    state counsel's reasons for concluding that the appeal is frivolous.  Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Commonwealth v. Santiago*, 978 A.2d 349, 361 (Pa. 2009).  Substantial compliance with these requirements is sufficient.  *Commonwealth v. Wrecks*, 934 A.2d 1287, 1290 (Pa. Super. 2007).

Upon review, it appears that counsel has substantially complied with the procedural requirements of *Anders* and its progeny.  Counsel filed a petition to withdraw, certifying that she has reviewed the case and determined that Mother's appeal is frivolous.  Counsel has also filed a brief, which includes a summary of the history and facts of the case, two potential issues that could be raised by Mother, and counsel's assessment of why those issues are frivolous, with citations to the record and to relevant legal authority.  *See Santiago*, *supra*.  Finally, counsel has sent Mother a letter advising her of her rights pursuant to *Millisock*, *supra*.  Because counsel has complied with the requirements of *Anders* and *Santiago*, we must now "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel."  *Commonwealth v. Flowers*, 113 A.3d 1246, 1250 (Pa. Super. 2015) (footnote omitted).

Counsel raises the following issue in her *Anders* brief:

> 1.  BCCYS failed to prove by clear[] and convincing evidence that Mother's parental rights should have been terminated pursuant to 23 Pa.C.S.[A.] §§ 2511(a)(1), (2), (5), and (8)[,] since she had substantially completed her objectives as required.

2. There was a strong emotional and parental bond between N.M. and the children[,] which would [result in] a negative effect on the [children] if the parental bond was permanently severed.

***Anders*** Brief, at 5.

Our standard of review in cases involving challenges to the involuntary termination of parental rights is well-settled:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result.

***Interest of M.V.***, 203 A.3d 1104, 1111 (Pa. Super. 2019), quoting ***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

The termination of parental rights is governed by section 2511 of the Adoption Act.[9]

> Our case law has made clear that under [s]ection 2511, the [trial] court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in [s]ection 2511(a). Only if the [trial] court determines that the parent's conduct warrants termination of his or her parental rights does the [trial] court engage in the second part of the analysis pursuant to [s]ection 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the

---

[9] ***See*** 23 Pa.C.S.A. §§ 2101-2938.

- 12 -

> emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re C.B.*, 230 A.3d 341, 347 (Pa. Super. 2020) (emphasis omitted).

> In a proceeding to terminate parental rights involuntarily, the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so. The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty[,] and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." It is well established that a court must examine the individual circumstances of each and every case and consider all explanations offered by the parent to determine if the evidence in light of the totality of the circumstances clearly warrants termination.

*In re adoption of S.M.*, 816 A.2d 1117, 1122 (Pa. Super. 2003) (citation omitted). *See also In C.P.*, 901 A.2d 516, 520 (Pa. Super. 2006) (party seeking termination of parental rights bears burden of proving by clear and convincing evidence that at least one of eight grounds for termination under section 2511(a) exists and that termination promotes emotional needs and welfare of child set forth in section 2511(b)).

> A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*In re K.Z.S.*, 946 A.2d 753, 759 (Pa. Super. 2008) (citation omitted).

Here, the trial court terminated Mother's rights under section 2511(a)(5).[10]  Because Mother has made little to no progress in remedying the conditions which led to her children's removal, and is not likely to do so within a reasonable period of time, the court did not abuse its discretion in terminating her rights.

As detailed above, over the life of this case, Mother has repeatedly failed to complete—or was unsuccessfully discharged from—programs and counseling recommended by her caseworkers.  She has never been deemed more than moderately compliant with her permanency plan, made—at best— minimal progress toward alleviating the circumstances which led to the removal of her children, and failed to attend 65 drug screenings.  She has failed to establish a stable home or income.  Mother's failure to participate in mental health services led to the suspension of her visitation rights with all four children as of June 2020, and she has not seen them since.  The psychiatrist who evaluated her opined that "one could not possibly contemplate returning any children to her care."  Report of Dr. Rotenberg, 7/1/19, at 9.  Finally, Mother failed to attend the termination hearings.

In light of the foregoing, we can discern no abuse of discretion on the part of the trial court in its determination that BCCYS proved, by clear and

_____

[10] We can affirm the trial court's decision regarding the termination of parental rights with regard to any single subsection of section 2511(a).  *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (en banc).

convincing evidence, that termination was proper under section 2511(a)(5). *In re C.B.*, *supra*.

We also find that the trial court properly found, by clear and convincing evidence, that termination of Mother's parental rights best serves the needs and welfare of Children pursuant to section 2511(b).

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa.1993) ], [the Supreme] Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re: T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

Here, A.H. has not seen Mother since February 8, 2019; the rest of the children have not seen her since June 2020. At the first termination hearing, BCCYS caseworker Esterly testified that the children are all "comfortable and happy" in their resource homes, and that they wish to remain there. N.T. Termination Hearing, 4/22/21, at 95-96. She testified that the older children explicitly expressed to her that they did not wish to have contact with Mother and have "expressed fear of her." *Id.* at 96-97. Esterly further testified that she "absolutely" saw no detriment to Children resulting from the termination of Mother's parental rights. *Id.* at 97.

Finally, GAL/Attorney Fronheiser testified that the most important thing for the children is permanency and that the case has gone on "far too long." N.T. Termination Hearing, 5/10/21, at 177. Attorney Fronheiser opined that it was in the best interests of the children that Mother's parental rights be terminated. *Id.* at 178.

In sum, there is competent, clear, and convincing evidence in the record to support the conclusion that the termination of Mother's parental rights serves Children's best interests. Mother cannot meet their needs and welfare, and their foster homes are currently doing so. The evidence also supports a determination that there is no bond between Children and Mother that, if severed, would cause a detrimental effect on them. *In re: T.S.M.*, *supra*. Finally, upon our independent review of the record, we discern no other non-frivolous issues.

Decrees affirmed. Petition to withdraw granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/09/2022

- 16 -