J-S02003-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.L.L., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: R.J., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1714 EDA 2023 |

Appeal from the Decree Entered June 7, 2023
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000004-2023

BEFORE: LAZARUS, P.J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, P.J.:         **FILED APRIL 26, 2024**

R.J. (Mother) appeals from the order, entered in the Court of Common Pleas of Philadelphia County, involuntarily terminating her parental rights to her child, J.L.L. (Child) (born 5/18).[1] Counsel has filed a petition to withdraw pursuant to **Anders v. California**, 386 U.S. 738 (1967), and

---

[*] Former Justice specially assigned to the Superior Court.

[1] Mother mistakenly filed two separate notices of appeal in an effort to comply with the holding of **Commonwealth v. Walker**, 185 A.3d 960 (Pa. 2018). However, because the trial court's June 7, 2023 order does not change Child's permanency goal from reunification to adoption, but rather schedules a future goal change hearing, her appeal at 1713 EDA 2023 was properly quashed. **See** Order, 6/7/23; **see also** Order, 8/4/23. **But see Walker**, 185 A.3d at 976 ("Where . . . one or more orders resolves issues arising on more than one docket or relating to more than one judgment, separate notices of appeals must be filed."); **see also In re M.P.**, 204 A.3d 976, 981 (Pa. Super. 2019) (applying **Walker** holding to children's fast track appeals).

*Commonwealth v. McClendon*, 434 A.2d 1185 (Pa. 1981).[2]  Due to Child's

removal from Mother's care more than twelve months ago and the persistence

of the conditions which led to Child's removal, we affirm.  We also grant

counsel's petition to withdraw.

The trial court set forth the relevant history leading to Child's

adjudication of dependency and placement into the custody of DHS as follows:

> On September 24, 2018, DHS received a General Protective
> Services [(GPS)] report alleging that [Mother] presented herself
> to her primary care physician's office and expressed that she
> wanted help with housing, drug and alcohol treatment, and mental
> health treatment.  Mother admitted to using phencyclidine [(PCP)]
> while Child slept at night.  The report stated that Mother disclosed
> that she was recently in an inpatient program at Gaudenzia[, a
> substance abuse and co-occurring disorders treatment provider,]
> with Child, but she did not complete the program; that Mother was
> attempting to get back into an inpatient program, but her

---

[2]  *See In re V.E.*, 611 A.2d 1267 (Pa. Super. 1992) (extending *Anders* briefing requirements to termination of parental rights appeals involving indigent parents represented by court-appointed counsel).

This matter returns to us following our previous denial of counsel's petition to withdraw.  *See In the Int. of J.L.L.*, No. 1714 EDA 2023 (Pa. Super. filed Feb. 12, 2024) (unpublished memorandum decision).  Upon review, we found that counsel failed to make a conscientious examination of the record and failed to present potential issues in support of Mother's appeal.  Accordingly, we denied counsel's petition for leave to withdraw and directed counsel to either file (1) an *Anders* brief that conforms to the requirements set forth in *Commonwealth v. Santiago*, 978 A.2d 349, 361 (Pa. 2009); or (2) an advocate's brief on Mother's behalf within 30 days from the date of our decision.

Pursuant to our direction, counsel filed a second *Anders* brief on March 3, 2024.  On March 14, 2024, the Philadelphia Department of Human Services (DHS) filed a letter with our Prothonotary notifying this Court that it would not be filing a brief in this matter.

insurance would not cover it; that Mother had a lot of insight into her addiction and was aware that she needed support with staying sober; and that Mother was participating in an outpatient program at Drexel Medicine. The report alleged that Mother was supervised by an adult probation officer and was subject to random urine tests; that Mother was attempting to move out of the home of [D.L. (Father)[3]], Child's [f]ather; that Mother was residing with a friend at the time of the report; that Mother wanted ongoing assistance with housing and[,] potentially, a dual diagnosis treatment program she could attend with Child. The report was substantiated.

On September 26, 2018, DHS met with Child, Mother, and Father at Father's home and Child appeared happy, healthy, and with all of his needs met. Mother stated that she attended [t]he Caring Together program at Drexel to address her history of substance abuse. Mother requested that DHS assist her with housing. Mother denied using drugs around Child. Mother further stated that she was diagnosed with bipolar disorder and depression. Father denied knowing that Mother was using drugs again. Father was aware that Mother was attending therapy for substance abuse and that he provided care for Child while Mother attended her program. Father had a history of substance abuse and attended Sobriety Through Out-Patient, Inc.[,] to address his drug and alcohol concerns. DHS found the home to be appropriate.

On November 7, 2018, DHS visited the family and Child appeared happy and was safe. Mother reported she had [neither] used drugs recently[,] nor thought about using drugs. Father stated that he supported Mother and ensured she attended her drug treatment program daily. Father stated that he was moving into a larger home and told Mother that she was welcome to reside there. DHS subsequently closed the case for Child.

On December 27, 2018, DHS received a GPS report alleging that Mother had five children who resided with various family members and foster families; that on December 26, 2018, Mother left Interim House West[, a residential treatment program,] and returned under the influence of PCP, which she admitted using; that Mother had Child in her care the whole time she was away

_____

[3] Father is not a party to the present appeal. At the time of the termination hearing, Mother and Father did not live together and Father testified that he barely sees Mother. *See* N.T. Termination Hearing, 6/7/23, at 71-72.

from Interim House West; and that the staff supervised Child until Mother seemed to be able to care for herself. The report stated that Child had bronchitis and [] had been taken to a hospital for medical care several times. The report[] further stated that Mother [had] mental health concerns and suffered from bipolar disorder, severe depression, and post-traumatic stress disorder [(PTSD)]. The report was substantiated.

On December 28, 2018, DHS met with Mother and Child at Interim House West. DHS noted that Child appeared lethargic and had a runny nose. Mother admitted that she used PCP at a friend's house while Child was in her care. Mother stated that she had learned that her former paramour was being released from prison, which caused her distress. Mother stated that she was fearful of her former paramour[,] with whom she experienced domestic violence. Mother stated that she did not want Child removed from her care and would remain drug free and follow the facility rules. DHS spoke to an Interim House West Administrator, who stated that Mother had been in the program for less than 30 days and had not complied with the rules of the program. The administrator stated that Mother had returned to the facility under the influence of drugs multiple times. DHS transported Mother and Child to a hospital. Child was later discharged to Father's care.

On May 17, 2019, DHS met with Child, Mother, and Father at the Children's Hospital of Philadelphia [(CHOP)]. Child had an upper respiratory infection and needed to be monitored. CHOP staff further stated that Father appeared [] agitated and was aggressive towards the staff. DHS interviewed Father, who denied having current substance abuse or mental health issues. Father stated that he last attended treatment at Wedge Recovery Centers and was not currently in treatment. Father stated that he was interested in caring for Child when Child was discharged from the hospital.

DHS subsequently learned that Father is the perpetrator of an indicated Child Protective Services [(CPS)] report dated September 24, 2015[,] concerning Child's half-sibling[.] Father exposed [the then] three-year[-]old [c]hild to PCP[,] which resulted in [the child's] hospitalization. DHS further learned that Mother was Father's paramour at the time and was in the home during the incident. On May 17, 2019, DHS obtained an [o]rder for [p]rotective [c]ustody [(OPC) []] for Child and [Child] remained at CHOP. On May 19, 2019, Child was discharged from CHOP and

transported to his foster care placement with Turning Points for Children, where he currently remains.

Trial Court Opinion, 10/26/23, at 1-4 (citations and footnote omitted); ***see also*** DHS Petition, 05/23/19, Ex. A ¶¶ f-q.

Pursuant to OPC, Mother was to have weekly supervised visits with Child, and Mother was referred to the Clinical Evaluation Unit (CEU) for immediate drug screening, monitoring, and three random drug screens prior to the next court date. ***See*** Order, 5/28/19. In addition, Mother's DHS case plan objectives included taking parenting classes, undergoing substance abuse treatment, and securing employment and appropriate housing. ***See*** N.T. Termination Hearing, 6/7/23, at 42. Throughout the time Child has been in placement, Mother has attempted drug and alcohol treatment programs at least three times but has not been consistent or successful in completing a program. ***Id.*** at 43-44. Makeda Hunter, a case manager supervisor with Turning Points for Children, Community Umbrella Agency-5 (CUA-5),[4] also testified that Mother has been unable to secure safe and stable housing while Child has been in DHS' care. ***Id.*** at 44. Regarding employment, Caseworker Hunter testified that Mother has a job for which she was able to provide pay stubs. ***Id.*** Mother has generally appeared for weekly visits with Child but is

---

[4] Philadelphia DHS works alongside neighborhood organizations, called CUAs, to ensure the provision of services within a neighborhood when possible. There are ten CUA regions within Philadelphia. ***See*** *Department of Human Services Who's involved in your case?*, CITY OF PHILADELPHIA, https://www.phila.gov/departments/department-of-human-services/whos-involved-in-your-case/ (last visited Apr. 5, 2024).

often late. *Id.* at 44-45 (case manager testifying visitation records show several instances of Mother arriving at end of visit between January and June of 2023). Over the lifetime of Child's placement, Mother's compliance with her case plan objectives was determined to be minimal.[5] *Id.* 48-49.

Since May of 2019, Child has remained in the same foster home, in kinship placement.[6] *Id.* at 37-38. Child lives with foster parent, foster parent's adopted niece, and Child's older half-sister, who was adopted by foster parent. *Id.* at 38-39. Child is very bonded to foster parent, refers to her as "Mommy," and the two appear to have an "affectionate relationship." *Id.* at 40-41.

On January 6, 2023, DHS filed petitions seeking to terminate Mother's and Father's parental rights. On June 7, 2023, the trial court held a termination hearing[7] at which Mother, Father, two CUA case workers, a CEU evaluator, and a social worker testified. At the conclusion of the hearing, the trial court held in abeyance its decision with respect to Father but found clear

---

[5] We note that Mother's case plan compliance was initially substantial or complete, but that her compliance level appeared to decrease at the end of 2020 and was minimal by the Fall of 2021.

[6] Child was temporarily in respite care following allegations of abuse by foster parent's spouse. CUA case manager Makeda Hunter testified that foster parent and spouse were separated and that foster parent was pursuing a divorce. *See* N.T. Termination Hearing, 6/7/23, at 40.

[7] At the termination hearing, Harry Levin, Esquire, represented Child's legal interests, and Jane Marie Morrissey, Esquire, guardian *ad litem* (GAL), represented Child's best interests. *See* 23 Pa.C.S.A. § 2313(a).

and convincing evidence to involuntarily terminate Mother's parental rights with respect to Child. On that same date, the trial court entered a decree terminating Mother's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), (8) and (b) of the Adoption Act.[8]

Mother filed a timely notice of appeal. Thereafter, on November 29, 2023, counsel filed a petition to withdraw, as well as an accompanying **Anders** brief.[9] As stated earlier, we ordered counsel to file either a conforming **Anders** brief or an advocate's brief on Mother's behalf. **See In the Interest of: J.L.L.**, 1714 EDA 2023 (Pa. Super. filed Feb. 12, 2024) (unpublished memorandum decision). On March 3, 2024, counsel filed a second application to withdraw and **Anders** brief with our Court.

In **In re V.E.**, 611 A.2d 1267 (Pa. Super. 1992), our Court stated:

> Counsel appointed to represent an indigent parent on a first appeal from a decree involuntarily terminating his or her parental rights, may, after a conscientious and thorough review of the

---

[8] 23 Pa.C.S.A. §§ 2101-2938.

[9] Pursuant to Pa.R.A.P. 1925(c)(4):

> If counsel intends to seek to withdraw in a criminal case pursuant to **Anders**/**Santiago** . . ., counsel shall file of record and serve on the judge a statement of intent to withdraw in lieu of filing a [Rule 1925(b)] Statement.

Pa.R.A.P. 1925 (c)(4). **See In the Interest of J.T.**, 983 A.2d 771 (Pa. Super. 2009) (where **Anders** procedure from criminal proceedings has been applied to parental termination cases, parent's counsel acted appropriately by following Rule 1925(c)(4) in appeal from decision terminating parental rights to child).

record, petition this court for leave to withdraw representation if he or she can find no issues of arguable merit on which to base the appeal. Given the less stringent standard of proof required and the quasi-adversarial nature of a termination proceeding in which a parent is not guaranteed the same procedural and evidentiary rights as a criminal defendant, the court holds that appointed counsel seeking to withdraw representation must submit an *Anders* brief.

*Id.* at 1275. Moreover, we held that "any motion to withdraw representation, submitted by appointed counsel, must be accompanied by an *advocate's brief*, and not the *amicus curiae* brief delineated in *McClendon*[]." *Id.* (emphasis in original); *see also In re Adoption of R.I.*, 312 A.2d 601, 602 (Pa. 1973) (The logic behind an individual in a criminal case being "entitled to counsel at any proceeding which may lead to the deprivation of 'substantial rights' . . . . is equally applicable to a case involving an indigent parent faced with the loss of her child.").

In her *Anders* brief, counsel raises the following issues for our consideration:

> 1. Whether the trial court committed reversible error when it involuntary terminated Mother's parental rights where such determination was not supported by clear and convincing evidence under the Adoption Act, 23 Pa.C.S.A. §[§] 2511(a)(1)[,](2)[,](5)[, and] (8).

> 2. Whether the trial court committed reversible error when it involuntarily terminated Mother's parental rights without giving primary consideration to the effect that the termination would have on the developmental, physical, and emotional needs of the child as required by the Adoption Act, 23 Pa. C.S.A. § 2511(b).

*Anders* Brief, at 7.

Before reaching the merits of the appeal, we must first address counsel's application to withdraw. To withdraw under *Anders*, counsel must:

(1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; (2) furnish a copy of the [**Anders**] brief to the [appellant]; and (3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

***Commonwealth v. Cartrette***, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*) (citations omitted); ***see also In re Adoption of V.G.***, 751 A.2d 1174 (Pa. Super. 2000) (reiterating requirements counsel must satisfy before being permitted to withdraw in termination appeals).

With respect to the third **Anders** requirement, that counsel inform the appellant of his or her rights in light of counsel's withdrawal, this Court has held that counsel must "attach to [his or her] petition to withdraw a copy of the letter sent to [the] client advising him or her of their rights." ***Commonwealth v. Millisock***, 873 A.2d 748, 752 (Pa. Super. 2005).

An **Anders** brief must also comply with the following requirements:

(1) provide a summary of the procedural history and facts, with citations to the record;

(2) refer to anything in the record that counsel believes arguably supports the appeal;

(3) set forth counsel's conclusion that the appeal is frivolous; and

(4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

***Commonwealth v. Santiago***, 978 A.2d 349, 361 (Pa. 2009). Finally, this Court must "conduct an independent review of the record to discern if there

are any additional, non-frivolous issues overlooked by counsel." ***Commonwealth v. Flowers***, 113 A.3d 1246, 1250 (Pa. Super. 2015) (footnote omitted).

Here, in her second attempt, counsel for Mother filed a petition with this Court and requested leave to withdraw as counsel in the instant appeal.[10] Counsel also attached to the petition a copy of the letter sent to Mother advising her of her rights to retain new counsel, proceed *pro se*, or raise issues in response to the brief. ***See Millisock***, ***supra***. Additionally, counsel filed an ***Anders***/***McClendon*** brief, in which she complies with the procedures of ***Santiago***, ***supra***. Accordingly, we find that counsel has substantially complied[11] with the requirements of ***Anders***, ***McClendon***, and ***Santiago***, and we proceed with an independent review of the merits. ***See Flowers***, ***supra***.

_____

[10] Counsel has not, in her application to withdraw as counsel, represented that she made "a conscientious examination of the record[ and] has determined that the appeal would be frivolous[,]" as required by ***Cartrette***, ***supra***, which we also stated in our prior memorandum, denying her petition to withdraw. ***See In the Int. of J.L.L.***, ***supra***. However, counsel has stated in her ***Anders*** brief that she has made a "conscientious examination of the record . . . and [] concluded that the record does not support [an] appeal." ***Anders*** Brief, at 18-19. Nevertheless, we have previously determined that we may proceed to the merits of the appeal if counsel substantially complies with the ***Anders*** requirements. ***Commonwealth v. Wrecks***, 934 A.2d 1287, 1290 (Pa. Super. 2007).

[11] While we conclude that counsel substantially complied with the above requirements, we note that counsel's revisions to her ***Anders*** brief, following our previous denial of her petition to withdraw, are limited, particularly considering the extent to which we detailed our concerns in ***In the Int. of J.L.L.***, No. 1714 EDA 2023, (Pa. Super. filed Feb. 12, 2024) (unpublished
*(Footnote Continued Next Page)*

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. [A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

A court must conduct a bifurcated analysis when faced with a petition to involuntarily terminate parental rights:

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in [s]ection 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to [s]ection 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Instantly, the trial court terminated Mother's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), (8), and (b). In order to affirm the

---

memorandum decision). However, the revised brief is minimally sufficient, and we conclude that counsel has made the requisite conscientious examination of the record, attempted to frame any arguments in support of Mother's appeal, and concluded that the instant appeal is frivolous.

- 11 -

termination of parental rights, this Court need only agree with the trial court's findings under any one subsection of section 2511(a). **See In re B.L.W.**, 843 A.2d 380, 384 (Pa. Super. 2004) (en banc). After review, we conclude that the record supports termination under subsections 2511(a)(5) and (8).

Pursuant to subsections (a)(5) and (8), parental rights may be terminated, after the filing of a petition, when:

> (5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time[,] and termination of the parental rights would best serve the needs and welfare of the child.

> \* \* \*

> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist[,] and termination of parental rights would best serve the needs and welfare of the child.

23 Pa.C.S.A. §§ 2511(a)(5), (8).

Here, Child has been in care for over four years,[12] during which time Mother's goals have remained the same: attend parenting classes, undergo substance abuse treatment, and secure employment and housing. **See** N.T.

---

[12] It is undisputed that Child has been out of Mother's care for more than twelve months, as required by section 2511(a)(8).

Termination Hearing, 6/7/23, at 42-43. Mother completed parenting classes and obtained verifiable employment, *see id.* at 44; however, she was unable to successfully complete substance abuse treatment or secure appropriate housing during the entirety of Child's time in care. *See id.* at 43-44 (Caseworker Hunter testifying Mother has not successfully completed program over life of case); *id.* at 63 (Caseworker Hunter testifying CUA could not offer housing assistance because Mother using drugs); *id.* at 91-92 (Mother testifying current housing not appropriate for reunification and she is on waitlist for housing).

In addition, Mother has not progressed with her visits with Child. After initially being ordered to have supervised visits, in 2020 the court found that Mother could have unsupervised weekly visits, *see* Permanency Review Order, 1/17/20, and could progress to unsupervised overnight visits once Covid restrictions were lifted. *See* Permanency Review Order, 6/10/20. However, at the end of 2020, the court reverted to weekly supervised visits and this visitation schedule continued until DHS filed its termination petition in 2023.[13] *See* Permanency Review Order, 11/2/20; Permanency Review Order, 1/23/23. Finally, Mother's compliance with her permanency plan was initially substantial or moderate, but declined and was noted to be minimal during the

---

[13] Moreover, Mother's visits with Child were noted to be inconsistent and testimony indicated that Mother would, on occasion, arrive late or not appear at all. *See* N.T. Termination Hearing, 6/7/23, at 44. Mother disputed this characterization, testifying that visits were cancelled by CUA and never rescheduled. *Id.* at 93.

latter half of Child's placement.[14]  **See** N.T. Termination Hearing, 6/7/23, at 48-49.

The trial court noted the significance of Mother consistently failing to "submit negative drug screens[,] even though drug abuse was a major concern since the [beginning] of this case due to Mother using PCP while Child was in her care."  Trial Court Opinion, 10/26/23, at 14-15.  Additionally, "Mother's latest drug screen reviewed during [the termination] hearing was positive for marijuana[,]" and Mother did not have a medical marijuana card. **Id.** at 15.  Finally, the court stated that "Mother has not remedied any of the concerns [that] brought the Child into care[,] which presents a concern regarding her ability to safely parent the Child on a full-time basis." **Id.**  It is clear that the conditions which led to Child's removal from Mother's care continue to exist.  **See In re Adoption of C.L.G.**, 956 A.2d 999, 1005 (Pa. Super. 2008) (termination proper where record supported trial court's finding that Mother could not provide adequate housing and parenting); **id.** at 1006- 08 (Mother's drug use part of original reason for removal and subsequent related issues were direct consequence of drug use, which supported termination).

---

[14] The court held permanency review hearings on June 10, 2020, November 2, 2020, March 22, 2021, August 2, 2021, October 25, 2021, May 16, 2022, September 2, 2022, November 28, 2022, December 19, 2022, January 23, 2023, and April 12, 2023.

Importantly, Child appears to have a close and established bond with foster parent, with whom Child has resided since May of 2019.[15]  As we noted above, Child is very bonded to foster parent, refers to her as "Mommy," and the two appear to have an "affectionate relationship."   N.T. Termination Hearing, 6/7/23, at 40-41.  In addition, Roya Paller, a social worker,[16] testified that when she spoke with Child in respite care, he expressed his desire to "go home" and be adopted by "Mommy," his foster parent.  *Id.* at 8-9.  Paller testified that Child views foster parent and his sister "as his family." *Id.* at 8. Accordingly, based on the record, we conclude that the trial court properly terminated Mother's parental rights pursuant to sections 2511(a)(5) and (8). *See In re C.B.*, 230 A.3d 341, 348 (Pa. Super. 2020) ("Termination of parental rights under [s]ection 2511(a)(5) requires that:  (1) the child has been removed from parental care for at least six months; (2) the conditions which led to removal and placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child.") (citation omitted); *In re Adoption of M.E.P.*, 825 A.2d 1266, 1275-76 (Pa. Super. 2003) (to terminate parental rights under section 2511(a)(8), petitioner must show:  (1) child has been removed from parental care for 12

---

[15] *See supra*, n.7.

[16] No testimony was elicited as to Paller's credentials; however, her report states that she holds a Bachelor of Social Work and is employed by Forensic Social Work Services.  Paller was called as a witness by Attorney Levin, representing Child's legal interests.

- 15 -

months or more from date of removal; (2) conditions which led to removal or placement of child continue to exist; and (3) termination of parental rights would best serve needs and welfare of child); *see also In re M.E.*, 283 A.3d 820, 832 (Pa. Super. 2022) ("[Section] 2511(a)(8) does not require the court to evaluate a parent's willingness or ability to remedy the conditions that led to the placement of the children. . . . [Further] the third prong of [] 2511(a)(8) specifically accounts for the needs of the child.") (citations omitted).

We further conclude that the court properly determined that termination of Mother's parental rights was in Child's best interests pursuant to section 2511(b).[17] The determination of the best interests of a child is a separate consideration from a finding that a statutory ground for termination has been met under section 2511(a) and is "the paramount consideration in deciding

---

[17] Section 2511(b) states as follows:

**(b) Other considerations.**--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical[,] and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing[,] and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(b).

whether to terminate parental rights." ***In re S.D.T., Jr.***, 934 A.2d 703, 706 (Pa. Super. 2007). As we have stated, the needs and welfare of a child include "[i]ntangibles such as love, comfort, security, and stability[.]" ***In re C.P.***, 901 A.2d 516, 520 (Pa. Super. 2006). "The court must also discern the nature and status of the parent-child bond, paying close attention to the effect on the child of permanently severing the bond." ***Id.*** Although the text of section 2511(b) does not expressly require a statement or conclusion by the trial court, the case law calls for interpretation of any parent-child bond. If, however, "there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." ***In re K.Z.S.***, 946 A.2d 753, 762-63 (Pa. Super. 2008).

Our review of Mother's claim that the court erred with respect to termination of parental rights as it applies to section 2511(b) is well-established:

> In an appeal from an order terminating parental rights, our scope of review is broad and comprehensive, but our standard of review is narrow. We consider all the evidence, along with the legal conclusions and factual findings of the trial court. We reverse only if we find an abuse of discretion, an error of law, or insufficient evidentiary support. With respect to evidentiary support, we determine only whether the trial court's findings are supported by competent evidence. We accord the hearing judge's decision the same deference that we would give to a jury verdict.

***C.P.***, 901 A.2d at 520.

Testimony at the termination hearing demonstrated that Mother does not meet Child's emotional, educational, developmental, or daily needs.

Testimony suggested that during Mother's weekly visits with Child, Mother and Child would primarily have a snack and watch a movie. **_See_** N.T. Termination Hearing, 6/7/23, at 51. In addition, Caseworker Hunter testified that she did not believe it would cause irreparable harm to Child to terminate Mother's parental rights and that Child looks to foster parent to meet his daily, medical, and emotional needs. **_Id._** at 50. Child has lived with foster parent since May 2019 and expressed that he would like to be adopted by foster parent. **_Id._** at 8-9. Although Mother testified that she is "very close" with Child and that they have a "mother and son" relationship, **_see id._** at 93-94, the court did not find Mother's testimony credible.[18] Trial Court Opinion, 10/26/23, at 16. The trial court stated the following with respect to section 2511(b):

> In the instant matter, this Court determined the Child would not suffer irreparable emotional harm if Mother's parental rights were terminated. There was compelling testimony that the Child would not suffer harm if Mother's parental rights were terminated[,] and that Child was significantly bonded with her resource parent [with whom] he has lived . . . the past four years. (N.T. [Termination Hearing,] 06/07/2023[,] at 38). Child calls his resource parent "mom" and wants to be adopted by her. (**_Id._** at 8, 40-41). [] Mother believes Child is bonded to her, but she failed to offer any evidence establishing the existence of a parent-child bond. (**_Id_**. at 93-94). The testimony demonstrated that Child's primary bond is with his resource parent. (**_Id._** at 7-8). Additionally, the

---

[18] As we noted in our previous decision denying counsel's petition to withdraw, we found counsel's questioning of Mother with respect to parent-child bonding to be particularly lackluster. **_See generally_** N.T. Termination Hearing, 6/7/23, at 93-94. Mother's counsel asked her a total of six questions regarding her relationship with Child, during which Mother expressed a close relationship with Child, stating that they are bonded like "a mother and a son." **_Id._** Mother's counsel did not ask her to expand on her testimony, nor did representatives from DHS, the GAL, or the child advocate. **_See id._**

testimony demonstrated that Child's resource parent meets all of his medical and emotional needs. (*Id.* at 50). In determining that termination would best serve the needs and welfare of the Child, this Court considered that Mother has not been able to meet the Child's emotional, physical, and developmental needs for over four years prior to the termination hearing.

Trial Court Opinion, 10/26/23, at 16.

Where a parent's continued inability to remedy the conditions leading to Child's removal is a critical consideration in determining Child's developmental, physical, and emotional needs and welfare, we have held that termination of parental rights under section 2511(b) is proper. *See In re Adoption of C.D.R.*, 111 A.3d 1212, 1220 (Pa. Super. 2015) ("Clearly, it would not be in Child's best interest for his life to remain on hold indefinitely in hopes that Mother will one day be able to act as his parent.") (citation omitted).

As noted by the trial court, the record is clear that Child has been in placement for more than four years, most of which has been in the same home with foster parent and two other adopted children, one of whom is Child's half-sibling. Child needs permanency and Mother has been unable to care for Child given her ongoing drug use and inability to secure appropriate housing. Mother's compliance with her reunification goals has been minimal since the fall of 2021 and the record leading up to the termination hearing does not suggest that Mother would be able to reunify with Child in a reasonable amount of time. As such, we conclude that the trial court properly terminated Mother's parental rights under section 2511(b).

Finally, after an independent review of the record, we conclude that the appeal is frivolous and unsupported in law or in fact. There is sufficient, competent evidence to support the trial court's factual findings and the court's conclusions are not a result of an error of law or an abuse of discretion. *See T.S.M.*, *supra*. Thus, we grant counsel's application to withdraw. *See In re V.E.*, *supra*.

Order affirmed. Counsel's application to withdraw granted. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/26/2024